# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:06-CR-40003 |
| | ) | |
| **GREGORY PAUL PRICE, JR.** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Price's Motions for Compassionate Release (D. 104, 108) and the Government's Response (D. 109). For the reasons set forth below, Defendant's Motions are DENIED.

## BACKGROUND

On March 25, 2006, Defendant pled guilty to: (1) conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and (2) possession with intent to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D. 18). In April 2007, Defendant was sentenced to life in prison on each of Counts 1 and 2 to run concurrently, followed by ten years of supervised release. (D. 53). At the time of sentencing, Defendant had a total offense level of 37 and criminal history category of V, establishing a guideline sentencing range of 324 to 405 months. (D. 51, p. 16). However, since the Defendant had a statutory mandatory minimum sentence of life, life became the guideline range (U.S.S.G. § 5G1.1(b)). *Id.*

Defendant's criminal history that led to the concurrent life sentence started in November 2001, when he was manufacturing methamphetamine in his garage and the chemicals exploded

starting a fire. *Id.* at 10. As a result, he was convicted of possession of methamphetamine in Van Buren County, Michigan. *Id.* In lieu of spending 365 days in jail, he was placed in the Michigan State Boot Camp. *Id.* at 11. He was released on September 18, 2002 and placed on probation. *Id.* On October 4, 2002, Defendant violated his probation for consuming alcohol and was ordered to serve forty-five days in jail. *Id.* at 11. On May 12, 2003, was arrested and pled guilty to possession of methamphetamine and ordered to serve additional time in prison. *Id.* He was paroled on December 22, 2004, but returned to prison on September 26, 2005, for testing positive for illegal substances. *Id.*

Before returning to prison in September 2005, Defendant, along with his wife and several others, were part of a large-scale methamphetamine smuggling, manufacturing, and distributing organization in southwestern Michigan. *Id.* at 4. After the state put restrictions on the purchase of pseudoephedrine, Defendant developed a source for methamphetamine in Arizona. *Id.* at 5. In July 2005, Defendant traveled with a group to Arizona to purchase four pounds of methamphetamine and then returned to Michigan to distribute it to customers. *Id.* In August 2005, Defendant returned to Arizona and paid $60,000.00 for six pounds of methamphetamine. *Id.* The drugs were then transported to Michigan and distributed.

Shortly after the August 2005 trip, Defendant was arrested for violating his probation. *Id.* However, Defendant's wife decided to make a third trip to Arizona to purchase five pounds of methamphetamine for $50,000.00. *Id.* While in prison, Defendant advised his wife on travel plans to make the purchase. *Id.* During the return trip, the vehicles were pulled over for speeding and the methamphetamine was found. *Id.* These activities resulted in Defendant's life sentence.

On December 5, 2008, this Court entered an Order reducing Defendant's sentence from life to 300 months on each of Counts 1 and 2 to run concurrently. (D. 69). Defendant's sentence

was reduced again in August 2015 to 262 months on Counts 1 and 2 based on a guideline sentencing range that was subsequently lowered and made retroactive. (D. 100). Defendant is currently housed at FCI Edgefield in South Carolina, and his projected release date is April 9, 2028.

On January 4, 2021, Defendant filed a Motion for Compassionate Release. (D. 104). This Court appointed the Federal Public Defender, who filed an Amended Motion for Compassionate Release on February 2, 2021. (D. 108). On February 11, 2021, the Government filed its Response in opposition to compassionate release. (D. 109). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the

power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. (quoting § 3582(c)(1)(A)(ii)). This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Gunn*, 980 F.3d at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A). Since the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A),

an inmate is allowed to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for the BOP to file a motion or after waiting thirty days from when the inmate's request was received by the BOP, whichever is earlier.

The Government argues Defendant failed to exhaust his administrative remedies because he sought "home confinement" due to COVID-19, rather than "compassionate release." However, it is clear from the warden's letter denying Defendant's request for "compassionate release/reduction in sentence" that the BOP evaluated Plaintiff's request by the same standards as one for compassionate release. (D. 109-2). Furthermore, Defendant's initial Motion for Compassionate Release was filed more than thirty days after he made his initial request for release and his Amended Motion for Compassionate Release was filed after the BOP denied the request. (D. 104, D. 109-1, D. 109-2). Therefore, the Court finds the exhaustion requirements have been met and addresses this matter on the merits.

Defendant is a 38-year-old male who seeks compassionate release due to an underlying medical condition which increases his risk for severe illness if he contracts COVID-19, specifically hypertension. (D. 108, p. 7). In the records produced by the Government, Defendant was last treated for hypertension on September 3, 2014, and the findings indicate that Defendant has "well controlled" stage 1 hypertension. (D. 111-1, pp. 4-6). Defendant is also currently prescribed medication to take daily to control his blood pressure. *Id.* at 5. According to the CDC, people who suffer from hypertension *might be at increased risk* for severe illness from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 25, 2021).

Other than the controlled hypertension, Defendant has identified no other medical condition making him particularly susceptible to complications from COVID-19. Further, in contrast to some other BOP facilities where COVID-19 outbreaks are uncontrolled, FCI Edgefield only has one inmate who has tested positive for COVID-19. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 25, 2021). Therefore, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release.

The Court's consideration of the § 3553(a) factors also militates against early release for this Defendant. The Court has twice reduced Defendant's sentence from life to 300 months and then from 300 months to 262 months. (D. 69, D. 100). The Court finds this sentence appropriate considering the prior reductions, the fact Defendant's offense was repeated and serious, and his criminal history. Every time Defendant was released, he continued to use and/or sell drugs in violation of his probation. Most concerning was that despite being incarcerated for doing methamphetamine in violation of his probation in 2005, he continued to assist his wife in facilitating large drug transactions while he was in prison.

Further, Defendant has had disciplinary infractions while incarcerated. The infractions included, but are not limited to: the Defendant admitting to having drugs in his locker in September 2019; possessing a homemade weapon in February 2018; possessing an unauthorized item in March 2016; possession of numerous strips of suboxone in January 2014; possession of stolen items in November 2013; fighting with other inmates in June 2011; and possessing intoxicants in January 2008. (D. 109-4).

Accordingly, the Court finds that his early release would not be justifiable under the § 3553(a) factors and denies Defendant's request for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

For the reasons set forth above, Defendant's Motions for Compassionate Release [104], [108] are DENIED.

Entered: March 1, 2021.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge